**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
_____
                               )
QWEST COMMUNICATIONS           )
CORPORATION,                   )
                               )
          Petitioner,          )
                               )
     v.                        )    Civil Action No. 05-1836 (EGS)
                               )
HAMID ANSARI, et al.           )
                               )
          Respondents.         )
_____)
```

**MEMORANDUM OPINION**

Petitioner, Qwest Communications Corporation ("Qwest"), is the defendant in a lawsuit filed by respondents, Hamid Ansari and Broadband Utility Resources, L.P. ("BUR"), in the United States District Court for the District of Colorado.  That lawsuit is currently stayed pending a determination by this Court as to the arbitrability of the claims in respondents' Complaint and the outcome of any arbitration proceeding.  After careful consideration of the petition, the response and reply thereto, and for the reasons stated below, this Court concludes that the parties entered into a valid and enforceable arbitration agreement, and that the agreement encompasses all of the claims asserted in Ansari's and BUR's Complaint.  Accordingly, the parties are ordered to arbitrate all claims in the Complaint.

**I.   BACKGROUND**

On June 28, 2001, BUR contracted with Qwest for the lease of an Indefeasible Right of Use ("IRU") of telecommunications

network capacity. Compl. ¶¶ 2, 30, Ex. A to Pet. to Compel Arbitration. According to respondents, during negotiations on the IRU Agreement, Qwest misrepresented its intention to purchase telecommunications equipment from Ansari's then-employer Sonus, Compl. ¶¶ 10-63, and Qwest was legally barred from providing the IRU contemplated in the IRU Agreement. Compl. ¶¶ 64-94.

On October 22, 2003, Ansari and BUR filed a Complaint against Qwest in the United States District Court for the District of Colorado, alleging fraud, common law business torts, and violations of the Federal Communications Act. In response to the Complaint, Qwest moved to compel arbitration and stay the proceedings in Colorado. The district court concluded that it did not have power to compel arbitration because the IRU Agreement designated Washington, D.C. as the forum for any arbitration of disputes or disagreements "arising between Qwest and the Customer in connection with" the Agreement. IRU Agreement ¶ 20.1, Ex. 2 to Compl. The Tenth Circuit affirmed the trial court's order denying arbitration in Colorado. *See Ansari v. Qwest Communications Corp.*, 414 F.3d 1214, 1219-20 (10th Cir. 2005) ("[W]here the parties agreed to arbitrate in a particular forum[,] only a district court in that forum has authority to compel arbitration under § 4 [of the Federal Arbitration Act].").

**II.   DISCUSSION**

The Federal Arbitration Act ("FAA") provides that an arbitration clause in a contract is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The question of whether a claim is arbitrable is an issue for judicial determination.  *AT&T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986).  A court is not to rule on the merits of the underlying claims, rather it must only determine whether the parties have agreed to submit a particular grievance to arbitration.  *Id*.

The FAA establishes a strong federal policy in favor of arbitration and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  "[W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage."  *AT&T Tech. v. CWA*, 475 U.S. at 650 (internal quotation marks and citation omitted).  However, this Circuit has cautioned that, although courts are to be mindful of the federal

policy in favor of arbitration, "it is [the court's] task nonetheless to determine what appears to be most consistent with the intent of the parties."  *Nat'l R.R. Passenger Corp. v. Boston and Maine Corp.*, 850 F.2d 756, 760-61 (D.C. Cir. 1988). Ultimately, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *AT&T Tech. v. CWA*, 475 U.S. at 648.  In determining the intent of the parties, the Court is mindful that the "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000).

The IRU Agreement entered into by Qwest and BUR provides that:

> Any dispute or disagreement arising between Qwest and Customer in connection with this Agreement which is not settled to the mutual satisfaction of Qwest and Customer within thirty (30) days from the date that either party informs the other in writing that such dispute or disagreement exists, shall be settled by arbitration in Washington, D.C. in accordance with the Commercial Arbitration Rules of the American Arbitration Association in effect on the date that such notice is given. . . .

IRU Agreement ¶ 20.1.

Respondents do not challenge Qwest's assertion that the dispute arising between BUR and Qwest is "in connection with" the IRU Agreement.  Instead, respondents argue that the Petition to Compel Arbitration should be denied because the underlying IRU

Agreement is void *ab initio*.  The respondents contend that Qwest offered, drafted, and executed a contract that it knew or should have known was impossible or illegal to perform.  Specifically, respondents allege that Qwest entered into a contract to provide BUR with interLATA services at a time when Qwest was prohibited by federal law from providing all the interLATA services promised in the contract.

The Supreme Court's recent opinion in *Buckeye Check Cashing, Inc. v. Cardegna*, 126 S. Ct. 1204 (2006), is directly on point and governs this case.  In *Buckeye*, customers sued a check cashing business for charging usurious interest rates in violation of state law.  *Id*. at 1207.  Respondents argued that they should not be required to adhere to the arbitration provisions in the Deferred Deposit and Disclosure Agreement because the contract as a whole was rendered illegal and invalid by the usurious finance charge.  *Id*. at 1208.  In rejecting the respondents' arguments, the Court held that "because respondents challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract.  The challenge should therefore be considered by an arbitrator, not a court."  *Id*. at 1209.

In this case, BUR and Ansari challenge the validity of the IRU Agreement as a whole and do not challenge the arbitration clause.  Therefore, their challenge must go to an arbitrator.

*Id*. at 1210 ("[A] challenge to the validity of the contract as a whole, and not specifically the arbitration clause, must go to the arbitrator.").

Respondents argue that if the Court grants Qwest's Petition to Compel Arbitration, the petition should only be granted as to respondents' common law claims and not their claims under the Federal Communications Act. Respondents argue that their Communications Act claims may be brought only in federal district court or before the FCC and, therefore, are not subject to arbitration. They contend that the Communications Act claims should be referred back to the United States District Court for the District of Colorado, respondents' chosen venue. Respondents are incorrect as a matter of law.

In determining whether statutory claims may be arbitrated, courts must first ask "whether the parties agreed to submit their claims to arbitration, and then ask whether Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Green Tree*, 531 U.S. at 90. In this case, the parties agreed to arbitrate any claims arising in connection with the IRU Agreement. There is no dispute that the Communications Act claims arise in connection with the IRU Agreement.

Respondents contend that Congress did not intend to allow arbitration of Communications Act claims. They rely on Section

6

207 of the Communications Act, which provides that persons "claiming to be damaged by any common carrier subject to the [Communications Act] may either make [a] complaint to the [FCC] . . . or may bring suit . . . in any district court of the United States of competent jurisdiction." 47 U.S.C. § 207. Respondents also rely on the Ninth Circuit's decision in *AT&T Corp. v. Coeur d' Alene Tribe*, 295 F.3d 899, 905 (9th Cir. 2002), finding that "[Section] 207 establishes concurrent jurisdiction in the FCC and federal district courts only, leaving no room for adjudication in any other forum – be it state, tribal or otherwise."[1]

The party "seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue." *Green Tree*, 531 U.S. at 92. Such an intention may be evinced by the text of the statute, its legislative history, or an "inherent conflict" between the arbitration and the statute's underlying purposes. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *see also Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 483 (1989) (finding that a party must show that "Congress intended in a separate statute to preclude a waiver of judicial

---

[1] The Court agrees with petitioner that the Ninth Circuit's decision in *AT&T Corp. v. Coeur d' Alene Tribe* only stands for the proposition that claimants may bring their claims before the FCC or in federal district court, not in state or tribal courts. The opinion does not address arbitration and in no way suggests that parties are prohibited from arbitrating claims under the Communications Act.

remedies, or that such a waiver of judicial remedies inherently conflicts with the underlying purposes of that other statute").

Respondents have not met their burden.  The Supreme Court has repeatedly "recognized that federal statutory claims can be appropriately resolved through arbitration, and [has] enforced agreements to arbitrate that involve such claims."  *Green Tree*, 531 U.S. at 89 (citing *Rodriguez de Quijas,* 490 U.S. 477 (Securities Act of 1933); *Shearson/American Express Inc. v. McMahon,* 482 U.S. 220 (1987) (Securities Exchange Act of 1934 and RICO); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614 (1985) (Sherman Act)).  This Court finds no reason to treat the Federal Communications Act differently than these other statutes.  Section 207 of the Communications Act merely provides a grant of subject matter jurisdiction to district courts and the FCC.  Nothing in Section 207 or anywhere else in the text or the legislative history of the Federal Communications Act suggests that Congress intended to prohibit arbitration of Communications Act claims.

### III. CONCLUSION

For the foregoing reasons, the Court finds that Qwest entered into a valid and enforceable arbitration agreement with BUR, and that the arbitration agreement encompasses all of the claims asserted in respondents' Complaint, including the Federal Communications Act claims.  Accordingly, the Court **GRANTS** Qwest's

Petition to Compel Arbitration.  The parties are ordered to arbitrate all the claims in respondents' Complaint in accordance with the terms laid out in the arbitration clause of the IRU Agreement.  A separate Order accompanies this Memorandum Opinion.

**Signed:    Emmet G. Sullivan**
**United States District Judge**
**January 23, 2007**